UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WATKETA VALENZUELA, | Case No. 96-cr-511<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

Defendant Watketa Valenzuela ("Defendant") was originally sentenced to 360 months imprisonment for conspiring to distribute cocaine base or "crack." Defendant now seeks a reduction of that sentence [174], based upon amendments to the Federal Sentencing Guidelines. For the reasons discussed below, Defendant's motion is denied.

**I. Background**

On March 10, 1997, Defendant executed a written plea agreement with the government, pleading guilty to Count One (Conspiracy to Possess Cocaine With Intent to Distribute, 21 U.S.C. § 846) and Count Two (Employment or Use of Persons Under Eighteen Years of Age in Drug Operations, 21 U.S.C. § 861(a)(1)), of an eight-count indictment. [180] Ex. A. Defendant admitted that over a seven-month period he conspired with (and indeed, "managed") others in the distribution of crack and powder cocaine in the south side of Chicago. *Id.* The parties disputed the applicable base offense level under the Federal Sentencing Guidelines,

1

primarily due to disagreements regarding the quantity of crack attributable to the Defendant. *Id*. Ex. C.

The pre-sentence investigation report ("PSR") recommended the following answer to this disputed question:

> This officer found that the preponderance of the evidence supports that in excess of 1.5 kilograms of cocaine base, crack, was distributed during the period of the charged conspiracy. Surveillance and taped conversations of the conspirators support a finding that crack was sold 24 hours a day, seven days per week, and that a conservative estimate is 15 to 20 sales per half hour. Based upon a conservative estimate of 30 sales per hour of .1 gram of crack per sale, the amount sold over the period of the conspiracy results in over 10 kilograms of crack. This position is further supported by the fact that the co-conspirators sold 61 grams of crack to the undercover officer within 15 purchases during this period. In addition, the defendants own post arrest statements reflect that he estimates drug proceeds of $15,000 to $20,000 per day during this period. This would translate into sales of 150 grams per day, or over 22 kilograms during the charged conspiracy. Therefore, the base offense is level 38.

[180] at 3-4.

### A. Defendant's Sentencing

After the PSR was submitted, Judge George M. Marovich presided over a two-day sentencing hearing. At that hearing the government presented witnesses who testified, *inter alia*, that undercover police officers and an informant purchased 61.78 grams of cocaine (the vast majority of which was crack) from Defendant's organization and that over a seven-month period Defendant's organization sold

user-quantities of crack at four locations twenty-four hours a day, sometimes servicing as many as thirty buyers an hour. *Id.* Ex. D.

After hearing the testimony and the parties' arguments, Judge Marovich first noted that Defendant's lawyer had conceded that there were at least fifty grams of crack involved in the conspiracy. *Id.* Ex. C at 24. The Court further stated that it was convinced that the cocaine sold during the undercover investigation was primarily crack (as opposed to powder cocaine). *Id.* Judge Marovich's determination was based upon the laboratory reports and the testimony of the police officers who handled the contraband. *Id.* at 24-25.

Judge Marovich then announced an appropriate mathematical formula designed to determine the amount of crack for which Defendant should be held criminally accountable, based upon the evidence adduced at the sentencing hearing. *Id.* at 27-28. Judge Marovich's calculus differed from the formulas proffered by both the government and pretrial services. *Id.* The Court first divided the total amount of crack obtained during the course of the undercover investigation (approximately 61 grams) by the total number of undercover sales (15), and found that the average amount of crack per sale was four grams. *Id.* at 27. The Court then, based upon the testimony given at the sentencing hearing, observed that there were at least three to four people selling crack at any given time, and that up to thirty sales were accomplished per hour. *Id.* at 27-28.

Recognizing that his task implicated "some conclusions and some extrapolations," Judge Marovich reduced the number of grams per sale from four to

3

two, the number of buyers per hour from thirty to fifteen, and the number of selling points from four to two. *Id.* at 26, 28. In his formula, Judge Marovich then cut the amount of hours that crack was being sold from twenty-four hours per day to twelve. *Id.* at 28. Ultimately, under his rubric, Judge Marovich concluded that, based upon the evidence adduced at Defendant's sentencing hearing, Defendant's organization sold 144 kilograms grams of crack (2 grams per sale x 15 sales per hour x 2 selling points x 12 hours per day x 200 days of operation) during the period of the charged conspiracy. *Id.*

In light of these calculations, Judge Marovich made the following findings of fact at sentencing:

> So, I feel to come to the conclusion that we are dealing with 1.5 kilograms, at least, is a very conservative conclusion and by my math has a fudge factor of about times ten[1] and by the government's factor about times three or four, and therefore, it is my finding based upon the preponderance of the evidence that the amount of cocaine attributable to Mr. Watketa Valenzuela is at least 1.5 kilograms of crack cocaine.

*Id.* The Court limited its ruling to "at least" 1.5 kilograms because at the time of Defendant's sentencing, that was the amount of crack required to reach a base offense level of 38 under the Federal Sentencing Guidelines. *Id.*

The Court then increased Defendant's base offense level of 38 by 5 (due to Defendant's leadership role and the fact that Defendant's offense involved the use of minors), for a total offense level of 43. *Id.* The Court reduced that figure by 2, to

---

[1] As the government notes, Judge Marovich seemingly misspoke at this point. His calculus produced an estimate that Defendant was responsible for 144 kilograms of crack, but the Court only explicitly found that the amount of crack attributable to Defendant was "at least 1.5 kilograms."

4

41, to reflect Defendant's acceptance of responsibility. *Id.* at 28-30. The Court further found that Defendant's prior conduct merited a Criminal History Category of III. *Id.* at 28-30. With a combined offense level of 41 and a Criminal History Category of III, the Court determined that Defendant's sentencing range under the Federal Sentencing Guidelines was 360 months to life, and sentenced him to the minimum allowable time within that range. *Id.* at 28-30.

B.  **Appellate Review**

On direct appeal, Defendant contested the district court's finding that he was dealing crack (as opposed to powder) cocaine. *See United States v. Valenzuela*, 150 F.3d 664, 667 (7th Cir. 1998) ("[Defendant] does not challenge the amount of drugs attributed to him; he only questions the district court's conclusion that he dealt crack."). The Seventh Circuit rejected Defendant's challenge after concluding that his counsel had waived this argument by acknowledging at the sentencing hearing that Defendant had dealt at least fifty grams of crack. *Id.* at 668. The Court further observed that Defendant's appeal was doomed even absent any admission by his counsel, given Defendant's recorded statements to undercover officers and the testimony of those same witnesses at the sentencing hearing. *Id.*

Defendant then filed a habeas corpus petition, alleging ineffective assistance of counsel. *See United States v. Valenzuela*, 261 F.3d 694 (7th Cir. 2001). Judge Marovich rejected that petition after concluding that Defendant failed to show that his counsel's performance was constitutionally deficient, and the Seventh Circuit affirmed. *Id.* at 697.

5

## C. Defendant's First Attempt To Reduce His Sentence

On January 3, 2012, Defendant filed his first motion to reduce his sentence [141], pursuant to 28 U.S.C. § 3582 and recent amendments to the Federal Sentencing Guidelines. Defendant specifically argued that because Judge Marovich's sentence was "based on" delivery of 1.5 kilograms of crack, and recent amendments provided a new, lower base offense level for defendants in possession of that amount, he was therefore entitled to a reduction under § 1B1.10(a)(1) of the Federal Sentencing Guidelines. [141] at 1-3.

Judge Milton I. Shadur reviewed Defendant's prior motion, and determined that "review and analysis amply confirm what the probation officer . . . stated back in 1996"; namely, that Defendant was responsible for "sales of 150 grams per day, or over 22 kilograms during the charged conspiracy." [159] at 3 (internal quotation omitted). Because Judge Shadur found that Defendant's offenses involved more than 8.4 kilograms of crack (the legally-relevant amount at the time), Defendant's base offense level of 38 was not lowered and the Court was not authorized to reduce his sentence. *Id.* at 2.

Defendant appealed Judge Shadur's ruling to the Seventh Circuit, arguing that Judge Shadur's finding that his offense involved more than 8.4 kilograms of crack was inconsistent with Judge Marovich's previous determination that Defendant's conduct involved "at least 1.5 kilograms." *See United States v. Valenzuela*, 13-1266 (7th Cir. August 15, 2013). The Seventh Circuit once again rejected Defendant's argument, finding that Judge Marovich's failure to "mention

6

the 8.4 kilogram threshold at the time of Valenzuela's sentencing is irrelevant; that threshold was not legally relevant at the time." *Id.* at 2. The Seventh Circuit further found that Judge Shadur's subsequent determination regarding the 8.4 kilogram threshold, far from being inconsistent with Judge Marovich's ruling, was entirely appropriate; indeed, a "district court is *required* to determine the amount of crack cocaine attributable to the defendant in order to adjudicate the § 3582(c)(2) motion." *Id.* (emphasis in original). Ultimately, the Seventh Circuit held that Judge Shadur appropriately reviewed the relevant evidence (as summarized in the PSR) and reasonably determined that it supported a finding that Defendant was criminally accountable for at least 8.4 kilograms of crack. *Id.*

### D. Defendant's Second Motion To Reduce His Sentence

On July 13, 2015, Defendant filed the present motion, once again seeking a reduction of his sentence in light of amendments to the Federal Sentencing Guidelines. In pertinent part, those amendments provide that a base offense level of 38 now applies to an offense involving 25.2 kilograms or more of crack, while a base offense level of 36 applies to an offense involving between 8.4 and 25.2 kilograms of crack. *See* U.S.S.G. § 2D1.1(c).

## II. Analysis

Usually a "judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal

7

quotation omitted). 18 U.S.C. § 3582(c)(2) establishes one such exception to the general rule:

> In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Thus, § 3582(c)(2)'s exception applies only when the sentencing range upon which the defendant was originally sentenced has "subsequently been lowered by the Sentencing Commission." *Id.* Moreover, any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The policy statement most salient to Defendant's case is U.S.S.G. § 1B1.10(a)(2), which provides that a "reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. 3582(c)(2)" if the amendment "does not have the effect of lowering the defendant's applicable guideline range."

The Supreme Court outlined the practical import of § 3582(c)(2) and § 1B1.10(a)(2) in *Dillon v. United States*, 560 U.S. 817 (2010). There, the Court enumerated the following two-step procedure for district courts faced with § 3582(c)(2) motions:

> At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. Specifically, § 1B1.10(b)(1) requires the court to begin by determining

> the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing. In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected . . . .
>
> At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case. Because reference to § 3553(a) is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into plenary resentencing proceedings.

*Id.* at 827 (internal quotations omitted).

### A. Defendant Is Not Eligible For Relief

The parties disagree regarding the scope of this Court's inquiry during step one of the *Dillon* analysis. The government suggests that "this Court must determine the quantity of crack cocaine attributable to defendant from the sentencing record, and it may make new findings of fact from that record so long as those findings are not inconsistent with those made at the original sentencing." [180] at 23 (citing *United States v. Davis*, 682 F.3d 596 (7th Cir. 2012)). Defendant conversely insists that the "government's position contravenes the principles set forth in *Dillon*," insofar as "this Court has no way to determine exactly how *much* more than 1.5 kilograms Judge Marovich would have found for Mr. Valenzuela's relevant conduct." [182] at 4-6 (citing *United States v. Davison*, 761 F.3d 683 (7th Cir. 2014)). Defendant's argument, however, misconstrues controlling precedent.

9

As the Seventh Circuit explained to Defendant the last time he sought a reduction, a "district court is *required* to determine the amount of crack cocaine attributable to the defendant in order to adjudicate the § 3582(c)(2) motion." *United States v. Valenzuela*, 13-1266 (7th Cir. August 15, 2013) (emphasis in original). To make this required determination, the Court will consider the evidence adduced at Defendant's sentencing hearing, Defendant's admissions in the plea agreement, and the PSR. *See id.* ("District courts may rely on information in the PSR at sentencing as long as it is 'well-supported and appears reliable.'") (quoting *United States v. Irons*, 712 F.3d 1185, 1189 (7th Cir. 2013)).

Here, the PSR suggests that over 25.2 kilograms of crack are fairly attributable to Defendant. The probation officer specifically observed that Defendant's "own post arrest statements reflect that he estimates drug proceeds of $15,000 to $20,000 per day during the charged period." *See supra* at 2. Revenue of that scale "would translate into sales of 150 grams per day, or over 22 kilograms [of crack] during the charged conspiracy." *Id.* In fact, the probation officer's math would recommend a total of approximately 30 kilograms of crack sold during the period of the charged conspiracy (150 grams per day x 212 days between August 1, 1991 through February 29, 1992). Per the PSR, which was well-supported by the evidence, at least 25.2 kilograms of crack are attributable to Defendant.

As discussed previously, Judge Marovich's calculus leads to a similar determination. Pursuant to Judge Marovich's formula, which he derived from the evidence adduced at Defendant's sentencing hearing, Defendant's organization sold

approximately 144 kilograms of crack during the period of the charged conspiracy. *See supra* at 4.

Finally, this Court's independent review of the record compels a finding that at least 25.2 kilograms of crack are attributable to Defendant. Ample evidence supports this conclusion, including:

- Defendant's admission that he "managed this narcotics distribution organization," [180] Ex. A at 2;
- Defendant's admission that he made between $15,000 and $20,000 per day selling drugs during the pendency of the charged conspiracy, [180] Ex. D at 20;
- The testimony of Chicago Police Officer Thomas Richardson regarding his opinion as to the nature of the drugs being sold by Defendant's operation, *id.* at 26-42;
- Officer Richardson's testimony regarding the testing of the drugs sold by Defendant's operation, *id.*;
- Officer Richardson's testimony regarding the scope and scale of Defendant's operation, *id.* at 42-44;
- The testimony of Chicago Police Officer Steven Wilson regarding the 15 controlled purchases of crack by the government from Defendant and his organization, *id.* at 99-100, 109-112; and
- Officer Wilson's testimony regarding the scope and scale of Defendant's operation, *id.* at 100-105.

In the end, Defendant admitted that he managed a "narcotics distribution organization" that sold crack in sufficient volume to generate between $15,000 and $20,000 per day, over a seven-month period. Defendant's admissions are corroborated by the record, including the testimony of Officers Richardson and Wilson. Accordingly, this Court determines that, *at the very least*, 25.2 kilograms of crack are attributable to Defendant. Defendant's base offense level under the amended Federal Sentencing Guidelines, therefore, remains at 38, *see* U.S.S.G. § 2D1.1(c), such that this Court is not empowered to reduce Defendant's sentence. *Id.* § 1B1.10(a)(2).

### B. Due Process Does Not Require Defendant's Presence

Defendant next argues that the government should not be permitted to attribute more drug weight to Mr. Valenzuela than the 7.2 kilograms they sought at sentencing, without triggering due process concerns "necessitating Mr. Valenzuela the opportunity to fully relitigate his sentencing." [182] at 7. This argument misinterprets the nature of the Court's task. Pursuant to "its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding." *Dillon*, 560 U.S. at 825. Instead, § 3582(c)(2) merely authorizes the modification of Defendant's sentence in select circumstances. For the reasons discussed *supra*, those circumstances are not present here. Defendant's sentence is (and remains) final. Moreover, this final sentence was only imposed after a full sentencing hearing, at which point Defendant's counsel was given ample opportunity to cross-examine the

government's witnesses. *See generally* [180] Ex. D. There is no due process issue here.

## III. Conclusion

This Court finds, based upon Defendant's admissions and the evidence adduced during his sentencing hearing, that he is criminally accountable for at least 25.2 kilograms of crack. Defendant's offense level therefore remains at 38, and the Court is not empowered to modify his sentence. Defendant's motion is denied.

Dated: October 19, 2016

                                          Entered:

                                          _____
                                          John Robert Blakey
                                          United States District Judge